111 N.J. Super. 62 (1970)
267 A.2d 70
ALBERT DARRAH AND RUTH DARRAH, HIS WIFE, INDIVIDUALLY AND AS RESIDENTS AND TAXPAYERS OF THE TOWNSHIP OF EVESHAM, AND AS REPRESENTATIVES OF A CLASS OF OBJECTORS, PERSONS HEREIN DEFINED AND LISTED BY NAME, PLAINTIFFS-RESPONDENTS,
v.
THE TOWNSHIP OF EVESHAM, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 22, 1970.
Decided July 7, 1970.
*63 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. John O. Sitzler, Jr. argued the cause for appellants (Messrs. Mathews & Sitzler, attorneys; Mr. Robert W. Criscuolo, on the brief).
Mr. Gerald E. Haughey argued the cause for respondents (Messrs. Charles & Pluese, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.
In this proceeding in lieu of prerogative writs defendants Township of Evesham and its Municipal Utilities Authority (Authority) appeal from a summary judgment by the trial court declaring a municipal ordinance authorizing, inter alia, the construction of sewers as local improvements, to be unlawful in light of the existence of the Municipal Utilities Authority and enjoining defendants from taking any further action pursuant to the ordinance. Plaintiffs are residents of the unsewered portion of the township affected by the proposed installation. The township is *64 comprised of 4,000 homes, of which 3,000 have sewerage facilities. Of the remaining 1,000, only 70-78 are involved in this installation.
The facts are not in dispute. Defendant township had created a municipal utilities authority, as provided for in N.J.S.A. 40:14B-1 et seq. Although defendant Authority was still in existence, the township adopted ordinance No. 23-69 which provided for a municipal bond issue to finance the extension of water and sewerage facilities to the unsewered portion of the township. The cost was to be assessed solely against the property benefited as a local improvement. The construction of the improvement was to be done by the Authority and it received bids for the performance of the necessary construction.
Defendants argue that only the local improvement method of recovering the cost of the sewers is fair since three-fourths of the township already has such facilities. The existing sewers were built by the individual housing developers, the cost of which was passed on to the buyer in the sales price. If the construction and financing were accomplished according to the Municipal Utilities Authorities Law, the service charge of the present residents using the sewerage facilities would be increased. Consequently, defendants urge that the above result would be unfair.
In support of this policy and procedure, defendants contend that the Municipal Utilities Authorities Law, N.J.S.A. 40:14B-1 et seq., does not specifically provide that a municipal utilities authority, upon creation, becomes the exclusive means of providing the financing of sewerage facilities. Accordingly, they argue that the township retains the power to act concurrently in these matters with the Authority. Defendants rely entirely upon their interpretation of the pertinent statutory provisions noted above; they cite no case which supports their position.
Our reading of N.J.S.A. 40:14B-1 et seq., mandates the opposite conclusion. Initially, N.J.S.A. 40:14B-68 provides that the entire act
*65 * * * shall be construed liberally to effectuate the legislative intent and as complete and independent authority for the performance of each and every act and thing herein authorized, and a municipal authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provision of chapter 50 or any other provisions of Title 40 of the Revised Statutes * * *.
It has been recognized that a municipal utilities authority is the alter ego of the municipality in providing water and sewer services. Jordan v. Zidel, 40 N.J. 244, 248 (1963), citing Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456 (1954). As the alter ego, it follows that an authority should act in the place of the municipality in discharging the performance of this essential public need.
However, the act does specifically empower a municipality to cooperate with its utilities authority in certain limited instances. Jordan v. Zidel, supra, 40 N.J. at 248. For example, a municipality may donate or lend funds, or convey real or personal property to it. See N.J.S.A. 40:14B-24, 48. A municipality and an authority may enter into a contract for the treatment and disposal of sewage by means of the existing facilities of a municipality. See N.J.S.A. 40:14B-49. Since this act has specifically set forth the manner in which a municipality may aid an authority in the accomplishment of its purposes, we conclude that the act must be interpreted as reserving all other powers exclusively in the authority. Such an interpretation is more consistent with N.J.S.A. 40:14B-68, as above noted, which indicates that the act will be liberally construed to be the complete and independent authority for the performance of each and every task therein authorized.
In Santoro v. South Plainfield, 57 N.J. Super. 498, 501 (App. Div. 1959), the court considered the problem of whether a municipality could undertake the planning, financing and installing of sewers where a sewerage authority had been established pursuant to N.J.S.A. 40:14A-1 et seq. It was held that a sewerage authority has the full and exclusive power to undertake the planning, financing and installing of *66 sanitary sewers. Id. at 501. A municipality is absolutely forbidden to undertake such planning, financing and installing of sewers. Id. at 501. In reaching this conclusion the court relied on N.J.S.A. 40:14A-29, which has a substantially identical counterpart in N.J.S.A. 40:14B-61. In Santoro v. South Plainfield, 57 N.J. Super. 307, 312-13 (Law Div.), which we affirmed in 57 N.J. Super. 498, supra, the trial court found that if a municipality chooses to create a sewerage authority, its powers to provide sanitary sewers are thereby transferred to that authority. Moreover, the court found that it was implicit in this legislation establishing sewerage authorities that they have the exclusive right to deal with the pertinent subject matter to the exclusion of any other body, public, governmental or otherwise. Id. 57 N.J. Super. at 314.
Additionally, we hold that the theory of local assessments is not valid after a utilities authority is created. Landy v. Bellmawr Sewerage Auth., 61 N.J. Super. 396, 399 (App. Div. 1960). In Landy, the court was confronted with a similar community problem, i.e., that those citizens already having sewer facilities would be required to pay a higher service charge for the installation of new sewers unless the local assessment method were utilized.
Therein, the sewerage authority, itself, attempted to assess according to the benefit conferred. The court noted that although a local assessment might be more equitable, in view of previous contributions to the system and of the benefits actually received, it was beyond the statutory power of the authority to prescribe a rate classification according to the user's location in the community. Id. at 399. The court held that the statute (N.J.S.A. 40:14A-8) required the rates to be uniform "for the same type, class and amount of use or service." Id. at 400. This rate classification has its counterpart in N.J.S.A. 40:14B-22. It is to be noted that the Sewerage Authority Act, N.J.S.A. 40:14A-1 et seq., and the Municipal Utilities Authorities Act, N.J.S.A. 40:14B-1 et seq., provide for authorities having substantially the same *67 powers, structure and relationship to the municipality with respect to sewer service. Jordan v. Zidel, supra, 40 N.J. at 248.
Although Landy considered the power of an authority to utilize the local assessment method, we hold that N.J.S.A. 40:14B-1 et seq., and more particularly § 22, makes the logic and reasoning of that case applicable to a municipality which has created a utilities authority. Thus, we conclude that such a municipality is prohibited from recovering the cost of sewer extensions by the use of local assessments, as was here attempted.
Judgment affirmed.